WaRblaw, 3.
delivered the opinion of the Court.
I would on the circuit have been satisfied with verdicts for the defendants. I felt a prejudice against dealings carried on by a single individual, under the name of a corporate body. I could see no motive for W. J. Yincent to favor Davenport to the injury of his employer ; and I thought that the delay of all complaint until Yincent was dead, with the various circumstances from which might be inferred the knowledge and approval by John G. Winter, or his acknowledged agents, of Yincent’s acts in the transaction now complained of, might well be considered to sustain the testimony of William Yincent, which to me seemed to be candid and credible. But of all these matters the jury were the proper judges; and in support of their verdict, it may be observed that in the letters of the 26th and 27 May, there are expressions, not contained in the report, which are hardly recon-cileable with the notion that before writing these letters Yin-cent had received from Winter directions to discount the bill of Davenport, not accompanied by evidence of an actual consignment upon which it was drawn, or that the bill of 2,500 had been discounted before payment of the four checks.
The payment of overdrafts by a cashier appointed to keep money and pay it to the checks of persons entitled to draw, *s’ w^out some special excuse, a violation of duty.
Winter seems to have entertained great horror of any overdraft, and to have given to Yincent repeated cautions concerning Davenport, and Irvine’s engagement to accept only bills drawn on actual consignments; notwithstanding these matters let it be admitted that the bill of $2,500 might, (if there was reason to believe that funds to meet it were in Irvine’s hands,) have been properly discounted, as one which was intended to cover previous short drafts, although attended by no colemporaneous Consignment, and that the checks of Davenport, drawn in anticipation of a proper discount previously agreed upon, would not have been overdrafts ; the jury were instructed in conformity with these admissions, and yet have found that Yincent did pay Davenport’s overdrafts. To this conclusion they were probably led by the consciousness of irregularity, which perhaps may be *409 seen in the anxious and somewhat c ontradictory statements which Vincent made in the letters before mentioned, and in his omission to enter the check of $947,52 in the account which he kept of the transactions between the Bank and Davenport. By this finding, it is established that the circumstances which might have justified the discount of the bill did not exist, or that the payment of checks, (if made in anticipation,) was in anticipation of something which was not received : in effect that the bill of $2,500 was not in fact discounted, but was taken after payment of the checks, as a security for money which had been incautiously advanced.
Taking it for granted, then, that the verdict has established the payment by Vincent of overdrafts, in violation of his duty and without previous authority from Winter, this Court confines its attention to the question of subsequent satisfaction, which alone has been argued here.
Unquestionably an adoption of the acts of an agent, by a principal, after full knowledge of the facts, takes away from the principal all further right to complain of these acts. It has been seen and acknowledged that the general principles of law on this head were explained to the jury; that all questions concerning the plaintiff’s knowledge and intention were left to them, and that with a favorable view of the various circumstances from which his adoption of his agents act’s had been argued, it was submitted to them to decide whether there had been such adoption as affirmed these acts. But it has been here contended that there were' two transactions which so conclusively showed adoption and affirmation, that they should either have been ruled by the Court to be decisive, in favor of the defendant; or if loft to the jury ought necessarily to have been found so.
First. The suit in Savannah, wherein, upon the money counts in indebitatics assumpsit, the Bank of St. Mary’s obtained judgment against Davenport for the amount of the four checks in question which were specified in the bill of particulars.
Against the effect of this, it was urged by the plaintiff that the suit was commenced and prosecuted by Vincent, without the knowledge of Winter; and the evidence shews no communication made to plaintiff’s attorney by any person besides Vincent and Davenport. By his own act, whether obtaining a judgment in the name of his principal or any other act, an agent cannot discharge his liability; and the jury may have attained the conclusion that the obtaining of this judgment was the unauthorized act of Vincent.
But suppose that the knowledge and assent of Winter must be presumed; such a proceeding against Davenport is no necessary discharge of Vincent. Where an agent sells without authority, suit by the principal for the price, is an ac *410 knowledgment of the validity of the sale. Where an agent buys without authority, a suit by the principal for the article bought, or other act asserting his title to it, is an acknowledgment of the validity of the contract of purchase. The principal cannot at the same time affirm and disaffirm. If he meant to disaffirm, he should, in the case of sale, have sued for the article improperly sold ; in the case of purchase he might have refused to interfere with the article, or in some suit have sought the recovery of his money, improperly laid out. But money paid under a void authority, and even money embezzled, may be recovered in indebitatus assump-sit. By suing in this form, the plaintiff waives the last and gives his assent to the contract for refunding, which the law will imply. This contract may, however, be wholly independent of some act of wrong or negligence in a third person. In this case the complaint of the plaintiff is in effect that his money has been lent by his agent without' sufficient security. By suing for the money lent the plaintiff acknowledged the validity of the loan, but made no admission as to the security. He is entitled to have the money refunded by Davenport. This he would have been entitled to, had Yincent been a mere depository who lent without authority, although in that case suing for the money lent, might have been a recognition of the loan, which would have discharged the depository’s liability for lending. The agent’s right in this case to lend being clear, a recognition of the loan, in a suit between the principal and the borrower, has no necessary tendency, in an inquiry between the agent and the principal, to shew the principal’s approval of the security. If the plaintiff’s action be well founded, his failure to collect after judgment against Davenport, only makes more plain the misconduct which he alleges against Yincent, and the loss which he has thereby sustained.
Second. The conduct of the plaintiff in receiving at New York the bill for $2,500, drawn by Davenport, as owner and holder thereof, claiming funds in Irvine’s hands, and without complaint retaining the bill until this time.
So far as these matters constitute evidence upon the questions of fact, whether Winter with full knowledge did approve what Yincent had done, and whether Yincent has been in any way misled or injured by Winter’s conduct, they have been considered by the jury. For the defendants, it was urged that the bill sent without bill of lading or other evidence of actual consignment, gave to the plaintiff immediate information that Yincent had departed from the previous course of dealing, and that Winter’s long failure to complain, when he was in possession of all the letters, books apd papers of the Bank, shewed that he had no just ground of complaint which Yincent when living, could not explain. On the *411 other hand the omission of the largest check in the account, and the erroneous impression thus produced by Vincent, werel dwelt upon, and it was shown that the letter of 27th May contained Vincent’s direction for the plaintiff to take with the bill the course which was taken ; that this course was the one most likely to relieve Vincent from the liability he had incurred, and that by failing to use all probable means to obtain the money from Irvine, the plaintiff would have insured and discharged Vincent.
The verdict must be taken to have established that the bill was an insufficient security taken by Vincent to cover overdrafts already páid, and the question for this Court is whether the matters mentioned under this second head should necessarily have been held conclusive by either Court or jury.
By testing the value of the security which was taken, the plaintiff did not assent to its sufficiency, or acknowledge the propriety of its being taken. He was entitled to the use of all the securities which his agent took; if he was not wanting in diligence the agent has suffered nothing from his use of them. If the agent was liable for taking insufficient security, collection of part of the money by the principal would have been a relief to him pro tanto: entire failure to collect after effort made, leaves the loss of the principal and liability of the agent as they were before the effort made.
Regarding, then, the questions of fact which were submitted as decided against the defendants, this Court does not perceive that, in the matters which have been urged, there can be found a discharge of the agent, either as a conclusion of law, or as indisputable evidence of fact.
The motions are dismissed.
O’Neall, J. — Evans, J. — Frost, J. — and Withers, J.— concurred.

Motion refused.